UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| J.L.R., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PETER D CARPENTER, et al.,<br><br>    Defendants. | CASE NO. 3:22-CV-881-SJF |

**OPINION and ORDER**

Plaintiffs J.LR. and A.H.[1] filed this action on October 19, 2022, alleging that they were sexually assaulted by Peter Carpenter, a case manager at the Elkhart County Correctional Center ("ECCC"), while Plaintiffs were detained there in the Fall of 2020. The parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) on April 13, 2023. [DE 27]. The case was then reassigned to the undersigned magistrate judge on August 14, 2024, and the parties consented to the continued jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c). [DE 50].

Pending before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint filed by Defendants Elkhart County Sheriff Jeff Siegel and the Elkhart County Sheriff's Department (collectively, "the Sheriff[2]"). In his motion, the Sheriff contends that he was not named as a defendant before the expiration of the statute of limitations and that the

---

[1] Plaintiffs' full names have been redacted in the case caption and court filings. *See* DE 10.
[2] Suits against a government official in their official capacity are typically considered a suit against that officer's agency or department. *See Mahoney v. Beacon Health Ventures*, No. 3:19-CV-1130-RLM, 2022 WL 445503, at \*7 (N.D. Ind. Feb. 14, 2022).

1

claims alleged against him in the amended complaint do not relate back to the date of the original complaint. Accordingly, the Sheriff contends that all claims against him should be dismissed.

The Court now issues the following opinion and order based on the parties' continued consent. Finding that the statute of limitations for Plaintiffs' claims expired before the Sheriff was named as a defendant and that the negligence claims raised in the operative amended complaint do not relate back to the date of the initial complaint, the Sheriff's Motion to Dismiss will be granted in part.

I.   **Background**

The following facts, which come from Plaintiffs' operative amended complaint [DE 30], are accepted as true for purposes of the instant motion to dismiss. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

Plaintiffs J.L.R. and A.H. were booked into the ECCC on September 18, 2020, and on October 12, 2020, respectively, and both remained there until shortly before Thanksgiving 2020. Defendant Peter Carpenter was employed as a case worker for the Elkhart County Drug Court, and his office was located at the ECCC. Both J.L.R. and A.H. were enrolled in the Drug Court program with Carpenter as their assigned case manager. To successfully graduate from the program, Plaintiffs needed to complete various requirements, including attending meetings with Carpenter. Both allege that Carpenter initiated numerous unscheduled encounters of a sexual nature—including meetings in his locked office—and that Carpenter sexually assaulted them on at least one occasion during their detainment. [*See* DE 30 at 9-10, ¶¶34-35].

As a result of Carpenter's actions, Plaintiffs filed this case on October 19, 2022. Plaintiffs' initial complaint sued both Carpenter and Elkhart County as his employer. J.L.R. brought five state-law claims and two claims under the Eighth Amendment, while A.H. brought two claims under the Eighth Amendment. [*See* DE 11].

Plaintiffs filed their operative amended complaint on April 28, 2023. There, J.L.R. brings seven claims—five claims under Indiana state law and two claims under the Eighth Amendment—with one state-law claim and one Eighth Amendment Claim asserted against the Sheriff. A.H.'s six-count complaint brings four claims under Indiana state law and two under the Eighth Amendment, with one Eighth Amendment claim asserted against the Sheriff. The amended complaint drops Elkhart County as a party and no longer alleges that Elkhart County was Carpenter's employer. J.L.R.'s count of negligence instead alleges that the Sheriff was negligent on numerous fronts, including that the Sheriff was negligent by failing to properly supervise and monitor Carpenter and by failing to enforce established protocols. [DE 30 at 11, ¶¶40-41]. Both J.LR. and A.H. also allege that the Sheriff violated the Eighth Amendment by being deliberately indifferent to Carpenter's sexual assaults. [*Id.* ¶¶ 99, 111].

On July 7, 2023, the Sheriff moved to dismiss all claims against it as untimely. Plaintiffs requested—and received—an extension of their response deadline to August 18, 2023. After that date passed and no response was filed, the Court advised Plaintiffs that the Sheriff's motion would be ripe for summary ruling if no response was filed by September 8, 2023. [DE 45]. Plaintiffs then responded on September 7, 2023. In their response, Plaintiffs conceded that the Sheriff was named after the applicable statute of

3

limitations had run but contend that the amended complaint relates back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1)(C). The motion became ripe on September 14, 2023, after the Sheriff filed his reply.

## II.     Legal Standard

Generally, "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (internal citation omitted). Failure to file a complaint within the applicable statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). Thus, a statute of limitations defense—like the one raised by the Sheriff here—is not typically raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). But "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (internal citations omitted); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (courts may dismiss a complaint when the facts reveal it is "indisputably time-barred").

## III.    Analysis

In his motion to dismiss, the Sheriff contends that he was added as a defendant after the applicable statute of limitations expired. Plaintiffs do not dispute that the amended complaint was filed after the applicable statute of limitations but contend that the amended complaint relates back to the date of the original complaint under Fed. R. Civ. P. 15(c)(1)(C)(ii). The Sheriff, however, disputes that the amended complaint relates back. The Court begins with consideration of the applicable statute of limitations.

### A. Statute of Limitations

Plaintiffs' operative amended complaint raises state law negligence claims as well as Eighth Amendment deliberate indifference claims against the Sheriff. Under Indiana law, the statute of limitations for tort claims such as negligence is two years after the action accrues. *See* Ind. Code § 34-11-2-4. "[T]he cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992). Plaintiffs' Eighth Amendment claims, brought under § 1983,[3] adopt the statute of limitations for a state personal injury tort action in the state of the injury. *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009). Therefore, Plaintiffs' Eighth Amendment claims are also governed by the statute of limitations in § 34-11-2-4—two years after the action accrues.

Plaintiffs allege that Carpenter sexually assaulted them in middle of November 2020 (J.L.R.) and between the last week of October 2020 and the third week of November 2020 (A.H.). Thus, the original complaint filed against Carpenter and Elkhart County on October 19, 2022, was timely. But the operative amended complaint—which names the Sheriff as Carpenter's co-defendant for the first time—was not filed until April 28, 2023, around five months after the two-year statute of limitations period expired.

---

[3] Section 1983 vindicates "rights, privileges or immunities that are guaranteed by the U.S. Constitution or a federal statute." *See Narducci v. Moore*, 572 F.3d 313, 318–19 (7th Cir. 2009).

That does not end the Court's inquiry, however. Plaintiffs "may be able to replace or add defendants after the period of limitations has run by using the relation-back doctrine." *Williams v. Sims*, 390 F.3d 958, 959 (7th Cir. 2004). Accordingly, the Court must determine if the claims alleged in the amended complaint relate back to the date of the original complaint.

B.      **Relation Back**

"The purpose of allowing relation back is to prevent the barring of a legitimate legal claim because a plaintiff mistakenly identified the party to be sued." *Hegwood-Metcalf v. Truex*, No. 3:09-CV-453 JD, 2011 WL 1636262, at *4 (citations omitted). The relation-back doctrine is governed by Fed. R. Civ. P. 15(c)(1), which states:

> (1) *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Here, Plaintiffs' amended complaint changes the party against whom claims are asserted, triggering Fed. R. Civ. P. 15(c)(1)(C). Accordingly, to find that the amended complaint relates back to the date of the original complaint, the Court must determine whether "(1) the amended complaint arises out of the same occurrence set forth in the original complaint; (2) the added defendant received such notice of the institution of the action within the applicable statute of limitations so that he will not be prejudiced in maintaining his defense on the merits; and (3) the added defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." *Buy Direct, LLC v. DirectBuy, Inc.*, No. 2:15-CV-344-JPK, 2023 WL 142704, at *9 (N.D. Ind. Jan. 10, 2023).

### 1. Whether the Amended Complaint Arises Out of the Same Occurrence Set Forth in Original Complaint

The parties do not dispute that the amended complaint arises out of the same occurrence set forth in the original complaint. Accordingly, the Court will find this requirement satisfied.

### 2. Whether the Sheriff Received Notice Within the Applicable Statute of Limitations

Under the second requirement, the Sheriff must have received "notice of the institution of the action within the applicable statute of limitations so that he will not be prejudiced in maintaining his defense on the merits." *Id.* "Notice may either be actual or constructive, so long as the newly-named party was made aware of the issues in the complaint." *Hegwood-Metcalf v. Truex*, 2011 WL 1636262 (internal citation omitted). The Sheriff directly does not address the second requirement in his motion. In their

response, however, Plaintiffs contend that the Sheriff did receive notice within the period prescribed by Fed. R. Civ. P. 4(m) and would not be prejudiced. In support, Plaintiffs point to their tort claim notice mailed to both Elkhart County and the Sheriff on January 28, 2022, and which referred to "[t]hose personnel who operate the criminal justice system in Elkhart County, Indiana[.]" [DE 46-1 at 4]. Plaintiffs also contend that the Court's Rule 16(b) scheduling order set April 28, 2023, as the last day for Plaintiffs to amend the pleadings without leave of court, and their amended complaint was filed within this timeframe. [DE 22 at 1]. Plaintiffs also contend that Sheriff appeared on May 25, 2023, via the same counsel who represented Elkhart County at the outset of the case.

With only argument presented by Plaintiffs, the Court can only consider this requirement to be satisfied here. *Fair Hous. Ctr. of Cent. Indiana, Inc. v. Rainbow Realty Grp., Inc.*, No. 117CV01782JMSTAB, 2022 WL 6158365, at *1 (S.D. Ind. Oct. 7, 2022) ("The Court will not make arguments for the parties, nor should the parties expect that the Court will consider arguments that the parties could have made, but did not.").

### 3. Whether the Sheriff Knew or Should Have Known that, but for a Mistake Concerning his Identity, the Action Would Have Been Brought Against him

Although Sheriff appears to concede the first two requirements, the Sheriff contests that Plaintiffs satisfied the third requirement. The Sheriff contends that Plaintiffs did not make a "mistake concerning the proper party's identity" as defined by Rule 15(c)(1)(C)(ii). The Sheriff contends that Plaintiffs made a "fully informed choice" to sue Elkhart County, and that, if any mistake was made by Plaintiffs, it was "not a mistake within the meaning of Fed. R. Civ. P. 15(c)(1)(C)(ii)." [DE 42 at 17].

8

The Court starts by considering the meaning of "mistake" in this context. A "mistake concerning the identity of the proper party" under Rule 15(c)(1)(C)(ii) is a question of law. *See Smith v. Zettergren*, No. 1:18-cv-1924, 2021 WL 4502175, at *6 (N.D. Ill. Sept. 30, 2021). Courts have considered three types of mistakes under Rule 15(c)(1)(C)(ii):

> "(1) misstating the proper defendant's name; (2) failing to name the proper defendant or naming an incorrect defendant because the plaintiff does not know the correct defendant's identity; and (3) naming an incorrect defendant because of a mistake of law, such as when the underlying claim has not changed but the legally responsible institutional or individual party has been mistakenly identified."

*Buy Direct, LLC,* 2023 WL 142704, at *9 (quoting *Arp v. Ind. State Police*, No. 1:21-CV-02626-TWP-DLP, 2022 WL 3716526, at *5 (S.D. Ind. Aug. 29, 2022)) (internal quotation marks and punctuation omitted). *See also Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 560 (7th Cir. 2011) (discussing the first type of mistake); *Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021) (the second type); and *Hegwood-Metcalf,* 2011 WL 1636262, at *4 (the third type).

The first type of mistake involves "true misnomers, where the correct defendant is already before the court but a plaintiff misstates the name of the defendant." *Hegwood-Metcalf*, 2011 WL 1636262, at *8. Plaintiffs do not argue that they made this type of mistake, nor can the Court find that they did. Indeed, the sheriff is an independently elected office, and "a sheriff's department acts independently of a county board of commissioners." *Argandona v. Lake Cnty. Sheriff's Dep't*, No. 2:06 CV 259, 2007 WL 518799, at *3 (N.D. Ind. Feb. 13, 2007). Moreover, in the original complaint,

Plaintiffs discuss both Elkhart County and the Sheriff, noting their respective roles and responsibilities. [DE 11 at 2]. Accordingly, the Court cannot find that this was a mere misstatement falling under the first type of mistake.

The second type is one based on a lack of knowledge. Plaintiffs do not argue that they made this type of mistake. Nor can the Court find that they did. Plaintiffs mention both the Elkhart County and Elkhart County Sheriff in the original redacted complaint and distinguished between their roles in the operation of the ECCC. In their initial complaint, Plaintiffs stated that "Carpenter . . . was employed by Defendant Elkhart County ("County") in its probation department assigned to the Elkhart County Drug Court as a case manager" but acknowledged that the Sheriff "operated the ECCC" and that the Sheriff "was the final policymaker with respect to the health and wellbeing of inmates." [*Id.*]. The Court cannot find that Plaintiffs did not know the Sheriff's identity.

The third type of mistake allows for relation back when a claim has not changed but the responsible institution was incorrectly identified. The parties' arguments center on whether this type of mistake occurred. The Sheriff first maintains that this mistake did not occur because Plaintiffs did change the underlying state-law claim. The Sheriff explains that the original complaint brought claims against the County under a theory of respondeat superior by alleging that the County was Carpenter's employer. [*Id.*]. But in the amended complaint, Plaintiffs do not contend that the Sheriff employed Carpenter. The Sheriff maintains that, if Plaintiffs did make a mistake, "it pertained to what individual or entity was Carpenter's employer"—a mistake that "is not rectified by adding the Sheriff as a defendant." [*Id.* at 18]. As to Plaintiffs' Eighth Amendment

10

claims brought under § 1983, the Sheriff maintains that although Plaintiff's initial complaint "clearly acknowledge[ed] the Sheriff was distinct from Elkhart County, plaintiffs did not name the Sheriff as a defendant in their complaint." [DE 42 at 16]. The Sheriff thus contends that this "can only be seen as a fully informed choice by plaintiffs, not a mistake within the meaning of Fed. R. Civ. P. 15(c)(1)(C)(ii.)" [*Id.* at 17].

Plaintiffs raise two arguments in response. Plaintiffs argue that the underlying claims did not change, and the amended complaint merely remedies a mistakenly identified party, explaining that they failed to recognize that the Elkhart County "cannot be vicariously liable for torts committed by the sheriff in the day-to-day operations of the jail." [DE 46 at 2-3, 7]. Plaintiffs thus contend that they did make a mistake, and it is a mistake that the rule is meant to rectify. In support, Plaintiffs cite case law to contend that relation back was used much like this case. *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) (applying Federal Tort Claims Act); *Porter Cnty. Sheriff Dept. v. Guzorek*, 862 N.E.2d 254, 255 (Ind. 2007) (swapping a defendant with immunity for one without immunity). Plaintiffs also contend that they made an error in naming an institution rather than an individual for their Eighth Amendment claims arising under § 1983, which is another kind of mistake Rule 15(c) is designed to remedy. [DE 46 at 3, 7].

The Court will thus consider whether the third type of mistake occurred here, and whether the Sheriff knew or should have known but for this mistake, the action would have been brought against him, starting with Plaintiff J.L.R.'s negligence claim.

11

      **a.**      **Negligence Claim**

The Court first considers whether J.L.R. made the third type of mistake as to her negligence claim—i.e., whether her underlying negligence claim remains unchanged but the legally responsible institutional or individual party has been mistakenly identified. In the original complaint, Plaintiffs alleged that Carpenter "was employed by Defendant Elkhart County in its probation department assigned to the Elkhart County Drug Court as case manager." [DE 11 at 2, ¶5]. J.L.R also states that her claim against Elkhart County is based on theory of *respondeat superior*. [*See id.* ¶7 "County is being sued on theories of . . respondeat superior with regard to Plaintiff J.L.R.'s pendent state law claims."]. J.L.R. alleged the following negligent acts by Elkhart County:

> 40). County was negligent in failing to adequately train and instruct Carpenter in recognizing and avoiding the temptation to engage in fraternization that might lead to inappropriate sexual conduct with a female inmate.
>
> 41). County was negligent in failing to properly supervise and monitor Carpenter.
>
> 42). County was negligent in failing to enforce its established protocols and practices prohibiting a male staff member from meeting with a female inmate in a private office with the door closed unless another staff member was present.
>
> 43). County was negligent in allowing Carpenter to meet with J.L.R. alone in his private office instead of other spaces such as the interview rooms adjacent to A pod.
>
> 44). County was negligent in retaining Carpenter as an employee.
>
> 45). County was negligent in failing to adequately train and instruct jail personnel in recognizing, preventing, and reporting suspected sexual grooming behavior that might lead to inappropriate sexual conduct between Carpenter and J.L.R.

[DE 11 at 12, ¶¶40-45]. Thus, as the Sheriff contends, J.L.R.'s allegations were based on the contention that Elkhart County was Carpenter's employer.

In the operative amended complaint, J.L.R. again alleged that she was suing the Sheriff for negligence on theories of *respondeat superior*. [DE 30 at 2, ¶6]. But unlike the initial complaint, J.L.R. does not allege that Carpenter was employed by the Sheriff, instead alleging only that Carpenter "was employed as a case worker by the Elkhart County Drug Court." [DE 30 at 2, ¶5]. J.L.R. alleged the following negligent acts by the Sheriff:

> 40). Sheriff Siegel and Sheriff's Department were negligent in failing to properly supervise and monitor Carpenter to prevent his sexual assault of J.L.R.
>
> 41). Sheriff Siegel and Sheriff's Department were negligent in failing to enforce its established protocols and practices prohibiting Carpenter from meeting with J.L.R. in a private office with the door closed unless another staff member was present.
>
> 42). Sheriff Siegel and Sheriff's Department were negligent in allowing Carpenter to meet with J.L.R. alone in his private office instead of other spaces such as the interview rooms adjacent to A pod.
>
> 43). Sheriff Siegel and Sheriff's Department were negligent in failing to adequately train and instruct jail personnel in recognizing, preventing, and reporting suspected sexual grooming behavior that might lead to inappropriate sexual conduct between Carpenter and J.L.R.

The Sheriff contends that this change demonstrates that it is not the type of mistake contemplated by Rule 15. First, by removing prior references to Carpenter's employer, naming the Sheriff is not a mere substitution for Elkhart County like Plaintiffs contend. Second, Carpenter, as a drug court case manager, was a probation

officer, and thus was not an employee of Elkhart County. As a probation officer, he was an employee of the State of Indiana. *Lake Cnty. Bd. of Comm'rs v. State*, 181 N.E.3d 960, 962 (Ind. 2022) (stating that "[b]ased on a review of relevant statutes and caselaw, we first hold that probation officers are state employees for purposes of Indiana Code section 4-5-2-1.5" and referring to the statute's application in tort suits against state officials).

    Based on this, the Court cannot find that the underlying negligence claim was unchanged. Moreover, with J.L.R.'s original negligence allegations seeking to hold Carpenter's employer vicariously liable—and since the Sheriff is not Carpenter's employer—the Court also cannot find that the Sheriff "knew or should have known that it would have been named as a defendant but for a mistake" as to this claim. Fed. R. Civ. P. 15(c)(1)(C)(ii). Simply put, if J.L.R. meant to address a mistake in the original complaint regarding Carpenter's employer, naming the Sheriff does not address this mistake. This is bolstered by the allegations made in Plaintiffs' original complaint. Plaintiffs were aware of the Sheriff's integral and distinct role in running the ECCC at the time they began the case. For example, Plaintiffs refer to the "Sheriff's operational rules and regulations" and the "Sheriff's staff" within the context of the ECCC, [DE 11 at 5–6], thus distinguishing the Sheriff from the County in operating the ECCC. Additionally, Plaintiffs' initial complaint says that the County "Coordinator assigned Carpenter an office at ECCC," with "the Sheriff's approval." [DE 11 at 6]. This implies that Plaintiffs chose to target the County's negligence, not the Sheriff's negligence, in their original complaint.

Plaintiffs also contend that their tort claim notice [DE 46-1] shows that the Sheriff "should have expected the claim" because the tort claim notice "described conditions in the jail that led to [their] sexual assault." [DE 46]. The Court cannot agree because the notice also appears to target Carpenter's employer, alleging only a negligence claim, stating "Elkhart County was negligent, perhaps even grossly so, in its supervision of Carpenter . . .." [*Id.* at 3; DE 46-1 at 5].

### b. Eighth Amendment Claims

The Court next considers whether Plaintiffs made the third type of mistake with their Eighth Amendment claims—whether the underlying Eighth Amendment claims are unchanged, but the legally responsible institutional or individual party was mistakenly identified. Plaintiffs alleged that Sheriff failed to meet their constitutional responsibility under the Eighth Amendment by allowing Carpenter to sexually assault the Plaintiffs. In their original complaint, Plaintiffs each allege:

> 81). County violated J.L.R.'s Eighth Amendment right against cruel and unusual punishment, because its deliberate indifference caused Carpenter to sexually assault her.
> . . .
>
> 93). County violated A.H.s' Eighth Amendment right against cruel and unusual punishment, because its deliberate indifference caused Carpenter to sexually assault her.

[DE 11 at 18, 21].

In the operative amended complaint, Plaintiffs likewise alleged:

> 99). Sheriff Siegel and Sheriff's Department violated J.L.R.'s Eighth Amendment right against cruel and unusual punishment, because their deliberate indifference caused Carpenter to sexually assault her.
> . . .

>111). Sheriff Siegel and Sheriff's Department violated A.H.'s Eighth Amendment right against cruel and unusual punishment, because their deliberate indifference caused Carpenter to sexually assault her.

[DE 30 at 20, 23].

When a plaintiff attempts to sue a local governmental body, the governmental body is considered a person under the scope of Section 1983.[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). For liability to apply under *Monell*, local governmental liability attaches when "execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. But each municipality is "liable only for wrongs that they themselves cause." *Luck v. Rovenstine*, 168 F.3d 323, 325 (7th Cir. 1999). The Seventh Circuit has identified three circumstances in which "a municipality can be said to have violated the civil rights of an individual because of its policy," which are:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007) (abrogated by *Kemp v. Fulton County*, 27 F.4th 491 (7th Cir. 2022) on other grounds relating to defendant's awareness of a pretrial detainee in failure-to-protect cases) (citation omitted). "Such wrongs may

---

[4] Plaintiffs have also contended that suing an organization rather than an individual is considered a mistake under Section 1983. Typically, this arises in instances of immune organizations being sued, when the legally correct target is an individual in that organization. Conversely, under *Monell*, local governmental units may be sued directly as persons for unconstitutional conduct. *See Monell*, 436 U.S. at 690. Moreover, the Supreme Court has long held that "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." *Jinks v. Richland County*, 538 U.S. 456, 466 (2003).

arise from 'official policy,' that is to say 'acts which the municipality has officially sanctioned or ordered.'" *Luck*, 168 F.3d at 326 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986)). "The act of an ultimate decision-maker suffices" for creating official policy, *id.*, and under Indiana law, the sheriff's duty is to "take care of the county jail and its prisoners there." Ind. Code § 36–2–13–5(a)(7). The county sheriff is the "ultimate decision-maker" for operation of Elkhart County's jails under *Monell*'s liability for Section 1983.

Thus, the Sheriff would be the appropriate target for a Section 1983 claim where the ECCC's "official" policies enabled Carpenter to assault Plaintiffs. In their original complaint, the Plaintiffs alleged that:

> County's policy, practice and custom of assigning Carpenter this office and allowing him to encounter J.L.R. and A.H. alone behind a locked door, without supervision, combined with other facts, including in particular inaction in responding to warning signs that included an unmistakable pattern of sexual grooming behavior, allowed and encouraged Carpenter's sexual misconduct toward both of them.

[DE 11 at 16]. The Amended Complaint substitutes "County's policy . . ." with "Sheriff Siegel's and Sheriff's Department's policy . . ." but otherwise maintains the same language. [DE 30 at 17–18]. Thus, the Court finds that the underlying Eighth Amendment claims remain unchanged.

This also indicates, as the Plaintiffs themselves noted through their response, that Plaintiffs mistakenly identified the County as the final policymaker or ultimate decisionmaker for the health and wellbeing of the inmates at the ECCC. [DE 11 at 2]. The allegations in the pleadings indicate that their Eighth Amendment claim is brought

under *Monell* as Plaintiffs are targeting the "policy, practice, and custom" of the jail. [DE 11 at 16; DE 30 at 17]. Thus, Plaintiffs intended to target the policies of the jail in their Section 1983 claim under *Monell*. Naming Elkhart County as the "final policymaker" of the ECCC was indeed incorrect. But, unlike the mistake made with J.L.R.'s negligence claims, this mistake is remedied by naming the Sheriff, who is really the "final policymaker" of the ECCC.

Plaintiffs even concede that they erroneously believed they could hold the County vicariously liable for the Sheriff's actions in the day-to-day operation of the jail at the time they filed their original complaint. [*See* DE 46 at 3 "Plaintiffs' counsel failed to grasp this . . . ."]. "A plaintiff's 'deliberate but mistaken choice' . . . does not entirely foreclose an amendment from relating back under Rule 15(c)(1)(C)." *Herrera*, 8 F.4th at 498 (quoting *Krupski*, 560 U.S. at 549). But whether this is the type of mistake contemplated by Fed. R. Civ. P. 15(c) is close. Still, the Court remains cognizant that "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and affect the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Woods v. Ind. Univ. — Purdue Univ. at Indianapolis*, 996 F.2d 880, 882–83 (7th Cir. 1993). Moreover, at this stage of the case, the court must "construe the complaint in the light most favorable to the plaintiff[s], accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [t]he[i]r favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Here, based on the nature of the Eighth Amendment claims targeting the policies and practices of the jail, the Sheriff knew or should have known that but for a mistaken understanding of Indiana law, the Sheriff would have been named as a party in the original complaint. Thus, the Court finds that Plaintiffs' Eighth Amendment Claims do relate back to the date on which the original complaint was filed.

## IV. Conclusion

Based on the above, the Court **GRANTS IN PART and DENIES IN PART** the Sheriff's Motion to Dismiss [DE 41]. Plaintiff J.L.R.'s negligence claim [Count 1] is dismissed as time barred. Plaintiffs' Eighth Amendment claims against the Sheriff [J.L.R. Count 7 and A.H. Count 6] will remain.

Consistent with the Court's order on October 11, 2023, [DE 49], the stay of this case is now **LIFTED**. Plaintiffs and Defendant Carpenter are **ORDERED** to meet and confer and submit a Revised Report of Parties' Planning Meeting by **August 13, 2025**. The Court will issue an amended Rule 16(b) Scheduling Order or schedule a Preliminary Pretrial Conference as appropriate upon receipt of the parties' updated 26(f) report.

**SO ORDERED** this 23rd day of July 2025

s/Scott J. Frankel
_____
Scott J. Frankel
United States Magistrate Judge